**ECKERT et al. v. JACOBS et al.**

**No. 9004.**

Court of Civil Appeals of Texas. Austin.

June 26, 1940.

Trueman E. O'Quinn and Horace W. Morelock, both of Austin, for appellants.

Cofer & Cofer, of Austin, for appellees.

BAUGH, Justice.

Appellees, as plaintiffs below, sued to enjoin the City of Austin, and its named officers, from interfering with the sale of beer and wine by Jacobs at and upon his place of business at 1816 San Jacinto Street. After a hearing, a temporary injunction was granted as prayed for; hence this appeal.

While Jacobs, as tenant, was joined in this suit by the owner of the property, he is the party primarily interested and will be referred to as appellee. And for convenience the appellants will be referred to as the City.

The suit involves the validity, and application to appellee, of the general comprehensive zoning ordinance adopted by the City in July, 1937. It classified all properties within the city, that here involved, facing upon San Jacinto Street between 15th Street and 19th Street, being classified as "C-2" Commercial, on which sale of beer was thereafter prohibited, but excepted therefrom those already legally engaged in such business in this area at the time the ordinance took effect. Jacobs knew these facts when he leased said premises in June, 1939. He first applied for a permit from the City to sell beer on said premises, which was denied. He then sought a reclassification of these premises so as to authorize the sale of beer under the ordinance, and this was unanimously denied by the Zoning Board and by the City Council. He thereupon filed this suit.

The grounds asserted were that the ordinance was invalid in several specific respects; or, if valid, that it was sought to be enforced against him in a discriminatory manner. The asserted invalidity was predicated upon the following contentions:

1. That it violated Sec. 10 of Art. I of the Constitution, Vernon's Ann.St., and Art. 3 of the Penal Code, in that it made a violation thereof a criminal offense, and was so indefinite and uncertain as to be void. This for the reason that the area involved was not defined by any field notes, monuments or natural objects, but only by reference to a "Use District Map" which was attached to, and by reference made a part of, the ordinance.

2. That it violated the City Charter provision, in so far as the map was concerned, requiring all ordinances to be signed by the Mayor, or two Councilmen, and to be recorded before same became effective.

3. That the area involved was arbitrarily zoned contrary to the actual facts as they then existed.

4. That it was in conflict with Art. 667—10½ Penal Code as amended, Vernon's Ann.P.C. art. 667—10½ (see Acts 44th Leg. 2nd C.S., Ch. 467, p. 1795; amended by Acts 45th Leg. 1st C.S. Ch. 13, p. 1768), commonly known as the Liquor Control Act.

We do not find it necessary to determine whether the ordinance in question is sufficiently definite and certain as a penal ordinance to sustain a criminal conviction for a violation of it or not. This is not a criminal prosecution and that issue is not here presented. This is a civil proceeding involving the exercise by the City of its police power to regulate, by inhibiting in defined areas of the City, the right to carry on a character of business which the citizen does not have the inherent right under the Constitution and laws of the State to engage in; but one which he may engage in only by permission of the State. Even

if the penal provisions are invalid, which we do not determine, that would not necessarily render void the other provisions as a zoning regulation which constitute a rule of civil conduct. As to the latter, the rule of strict construction does not apply; and an act which is insufficient as a penal act may still be valid as a rule of civil conduct. West Texas Coaches v. Madi, Tex.Com.App., 26 S.W.2d 199; Houston & T. C. Ry. Co. v. Stevenson, Tex.Com.App., 29 S.W. 2d 995; 42 C.J. 631. Criminal prosecution was not the only method by which the City could enforce such ordinance, hence the criminal provisions are severable from the regulatory provisions. Violation of the latter could, under the express provisions of the ordinance itself, have been effectively enforced by injunction against the pursuance of such business in prohibited areas.

▇▇ The ordinance proper did not undertake to define classified areas in the City by metes and bounds nor by lot and block numbers on the streets and avenues of the City. It referred to and made a part of the ordinance an official "Use District Map" attached thereto. Appellee urges that this map was not recorded as required by law and by the City Charter, until after this suit was filed. While this original map was, it appears, at one time detached from the original ordinance for the purpose of making official copies thereof for use by the City; no contention is made that such map did not correctly reflect and delineate the true location and classification for zoning purposes of all the properties within the City. The map was available, as a part of the ordinance, for public inspection at all times, and readily disclosed the zoning classification of the property involved. Appellee Jacobs encountered no difficulty in ascertaining the classification of the property involved and knew such facts before he leased it. So far, therefore, as the zoning classification was concerned, we think this ordinance by reference to, and by expressly making a part thereof, an official map attached to it, which was at all times available for public inspection, and the correctness of which is not questioned, was sufficiently definite and certain to inform anyone of the zoned status of any area in the City, and to readily disclose the classification of the property involved. As a rule of civil conduct, and in the exercise of the police power by the City, such zoning ordinance, the general character of which has been repeatedly before the courts of the country, was valid.

While the exact contention here made was not urged in Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475, the ordinance there involved contained the same provision as the ordinance here involved—that is, making the map attached thereto, which delineated the zoned areas, a part of the ordinance by reference. The Supreme Court sustained that ordinance as valid. The power of a home rule city under its charter, and under the express provisions of Arts. 1011a to 1011j, Vernon's Ann.Tex. Stats., to enact such ordinances, is now well settled. City of Amarillo v. Stapf, 129 Tex. 81, 101 S.W.2d 229; City of West Univ. Place v. Ellis, Tex.Com.App., 134 S. W.2d 1038; Lombardo case supra and numerous cases therein cited.

▇▇ We do not here have any question of delegation of unauthorized power to the zoning board, nor of investing them with an arbitrary discretion in the premises. The ordinance itself, duly enacted, made the classification; and unless it be shown to be unreasonable, arbitrary, or discriminatory, it is valid regulation. It is immaterial whether the area involved was wholly commercial or partly residential and partly commercial. The proposed business of selling beer and wine on the premises was not one which Jacobs had the inherent right to engage in. It is a matter of common knowledge that the sale of intoxicants is accompanied with objections not common to other types of commercial enterprizes, and such facts constitute valid grounds for a separate classification or prohibition thereof in a given commercial area, for the protection of the health, morals, safety, peace and convenience of the public. The premises involved in the instant case were upon a main traffic artery of the City, in the vicinity of the University of Texas, and in an area partly residential. Clearly, the classification made by the City prohibiting the sale of liquors therein had ample grounds to sustain it.

▇▇ Nor does the provision of the ordinance authorizing a continuation of a non-conforming use in said area render the ordinance invalid. This portion of the ordinance (Sec. 10) authorized those already legally engaged in a thereafter prohibited use to continue such business, but expressly provided against further expansion of such business, and if once discontinued, that such non-conforming use might not thereafter be renewed; and that in case of damage or loss of the building in which

such non-conforming business was being conducted, restoration must be made within twelve months thereof and to an extent not to exceed 75% of the assessed tax valuation thereof immediately prior to such loss or damage. This provision discloses a clear purpose to limit and eventually eliminate such non-conforming uses; not to enlarge them or permit other non-conforming uses.

█ The authorizations by ordinance of the continuation of such non-conforming uses, already legally established in such areas when the ordinance takes effect, has been uniformly recognized; and such provisions have repeatedly been held not to render them invalid; and not to amount to unreasonable discrimination against others desiring to engage in additional non-conforming uses. Such ordinances operate prospectively and not retroactively. Undoubtedly these provisions are designed to avoid running afoul of the constitutional provisions against taking of property without compensation and guaranteeing due process of law. In any event, they have been repeatedly sustained. See Lombardo v. City of Dallas, supra, 73 S.W.2d at page 478; Austin v. Older, 1938, 283 Mich. 667, 278 N.W. 727; Zahn v. Los Angeles Board of Public Works, 195 Cal. 497, 234 P. 388; City of Miami v. Green, 131 Fla. 864, 180 So. 45; Landay v. Mac-Williams, 173 Md. 460, 196 A. 293, 114 A. L.R. 984, and annotations thereunder.

█ Nor does the City ordinance in question contravene the above cited provisions of the Liquor Control Act. Art. 667—10½ P.C. as amended. These provisions are:

"In any incorporated city or town where the sale of beer as defined in the Texas Liquor Control Act is prohibited by charter or amendments thereto or by any ordinance from being sold in the residential section, such charter amendments or ordinances shall remain valid and continue effective until such time as such charter provisions, amendments or ordinances may be repealed or amended.

"All incorporated cities and towns are hereby authorized to regulate the sale of beer within the corporate limits of such cities and towns by charter amendment or ordinance and may thereby prescribe the opening and closing hours for such sales; such cities and towns may also designate certain zones in the residential section or sections of said cities and towns where such regulations for opening and closing hours for the sale of beer shall be observed or where such sales may be prohibited."

█ The Act was manifestly one of restriction, not of enlargement, of the sale of intoxicating liquors. Clearly it was in nowise intended as a limitation upon the police powers of cities granted to them under the home rule amendment to the Constitution. Vernon's Ann.St.Const. art. 9, § 3; by Arts. 1175 and 1176, R.C.S.1925; and by Arts. 1011a to 1011j, Vernon's Tex. Stats. as amended. To construe the Liquor Control Act as limiting the powers of the City, in zoning ordinances affecting sale of liquor, to the terms and conditions therein stated, would make that Act, so far as liquor zoning is concerned, repeal many other provisions of the statutes giving broad governing powers to home rule cities. This obviously was never intended by the Legislature. This question was decided against appellee's contention in Pitre v. Baker, Tex.Civ.App., 111 S.W.2d 359, and in Tritico v. Liquor Control Board, Tex.Civ.App., 126 S.W.2d 738.

█ Nor was the ordinance rendered discriminatory by the fact, if such were true, that by acquiescence by some city officials in some particular violation of it, by permitting a transfer of a non-conforming permit or license to sell beer from one person to another in some other restricted area; or by the granting of an isolated permit to sell beer in some other prohibited area without official action thereon by the zoning board. The City cannot be estopped to enforce its valid zoning ordinances, merely by the failure of some of its officers to do so on other occasions, or in other instances. Nor would the acts of some of its officials in attempting to authorize its violation, or failure enforce such ordinances, render them invalid or inoperative. Leigh v. City of Wichita, 148 Kan. 607, 83 P.2d 644, 119 A.L.R. 1503, and annotations thereunder.

Having reached the conclusion that the ordinance attacked is valid; and that in its enforcement against appellees no discrimination resulted, it follows that the trial court erred in granting the temporary injunction herein appealed from. The injunction granted is therefore dissolved and the cause is reversed and remanded.

Injunction dissolved; cause reversed and remanded.