BOROUGH OF FANWOOD, A MUNICIPAL CORPORATION, RESPONDENT, v. ANTONIO ROCCO AND DIVISION OF ALCOHOLIC BEVERAGE CONTROL, APPELLANTS.

Argued September 13, 1960—Decided November 7, 1960.

*Mr. Alfred C. Clapp* argued the cause for the appellant Antonio Rocco (*Messrs. Hetfield & Hetfield,* attorneys).

*Mr. Samuel B. Helfand,* Deputy Attorney General, argued the cause for the appellant Division of Alcoholic Beverage Control (*Mr. David D. Furman,* Attorney General, attorney).

*Mr. Max L. Rosenstein* argued the cause for the respondent Borough of Fanwood (*Mr. William M. Beard,* attorney).

The opinion of the court was delivered by

JACOBS, J.  The Director of the Division of Alcoholic Beverage Control reversed the Borough of Fanwood's denial of Antonio Rocco's request for transfer of his licensed premises and the Director's action was, in turn, reversed by the

Appellate Division. See 59 *N. J. Super.* 306 (1960). We granted certification on application of the Division and the licensee.

Fanwood is a small residential community which is bounded on its west by Plainfield and on its other borders by Scotch Plains. It has two taverns operating under plenary retail consumption licenses and one package store operating under a plenary retail distribution license. See *N. J. S. A.* 33:1–12. The taverns and the package store are located on the outskirts of Fanwood along its Plainfield border and have been operated there for many years. The package store is owned by Mr. Rocco who applied to transfer his licensed premises to a store located about a mile and a half away in the midst of Fanwood's only business center. There have never been any licensed taverns or package stores (at least since New Jersey's present control system was established in 1933) in this business center although Fanwood has issued two limited retail distribution licenses permitting the sale in food stores of unchilled beer for off-premises consumption. See *N. J. S. A.* 33:1–12. Mr. Rocco's proposed new location is opposite Fanwood's railroad station and is two doors away from a confectionery store where local "teenagers" congregate. It is about a block from the Fanwood Presbyterian Church and about two and a half blocks from a public school.

After Mr. Rocco filed his application for transfer, Fanwood received letters of objection from the Presbyterian Church which expressed the view that the application should be denied "for the good of this town and its citizens" and from Mr. Goudy who stated that "it seems entirely unnecessary to permit the location of a liquor dispensary at the very center of our community." A public hearing was held on October 9, 1958 and on November 12, 1958 the borough council denied the application. In response to an inquiry by Mr. Rocco's son as to the reason for the denial, Councilman Hazel stated that "he voted the way the majority of people in Fanwood would want him to vote and that he had received objections from representatives of the church and individuals" and

Councilman Weisiger stated that the premises were "too close to stores where teenagers congregate." In due course Mr. Rocco appealed to the Division of Alcoholic Beverage Control where the borough filed an answer formally setting forth the reasons for its denial of the application. It referred to the aforementioned remarks of Councilmen Hazel and Weisiger, noted that previous applications had been denied "for the reason that a retail liquor store in this section of Fanwood was not desired by the people of Fanwood," and stated that the establishment of a package store at the proposed location would, in the judgment of the Mayor and Council, be "against the public interest" and that the factors which had been considered included the proximity to the church and school and the "strong sentiment in the Borough of Fanwood against any more retail liquor stores."

The Mayor and all of the borough's councilmen testified in the course of the hearing of the appeal before the Division of Alcoholic Beverage Control. Mayor Todd testified that at least five previous applications for licenses "in this immediate vicinity" had been denied; that the granting of Mr. Rocco's application would be "contrary to the feeling of most of the people of Fanwood"; and that other reasons discussed during the council's deliberations included "the closeness to this store where teenagers congregate, the result that could possibly happen from the purchase of liquor in this store and the possible consumption of it in nearby places." Councilman Mathews testified that after the application was filed he "tried to get a cross section of the various residents of Fanwood"; that all with whom he spoke were opposed to the application; that some mentioned the proximity of the premises where the local teenagers congregate; and that he personally believed that "it would be detrimental and not to the best interest of Fanwood" to license premises in that area. Councilman Agnoli testified that in his opinion the granting of the application would be against the public health, safety, morals and general welfare

of Fanwood; on cross-examination he referred specifically to the presence of the teenagers and the proximity of a lumber yard and a parking lot where packaged liquor might be taken and consumed.

Councilmen Hazel, Weisiger, Harris and Hansen were called as witnesses by Mr. Rocco and testified fully on direct and cross-examination. Councilman Hazel stated that he had discussed the application with people in the borough and they "just didn't like the idea of having a liquor store in the center of town. where the children congregate"; he expressly noted that the borough council "had previously denied applications for a liquor license in the same area." Councilman Weisiger testified that in his opinion the proposed location would be unsuitable particularly because of the teenagers and the proximity of the lumber yard and the railroad station; he also stressed the opposition expressed by many people in the borough with whom he had spoken about the matter. Councilman Harris testified that he considered the location to be an undesirable one and that the people with whom he had spoken objected to the proposed package store in the area. Councilman Hansen testified that the people in the borough with whom he had spoken "did not want to see a package store come into the center of Fanwood"; that he recognized the need for balancing the convenience to persons who might desire to make their purchases in Fanwood's business center with "the possible bad effects of having a liquor store in that area"; and that his considered opinion was "that it would not be to the best interest of the borough to have the package store in our business district."

In reversing the denial of the application for transfer, the Director of the Division of Alcoholic Beverage Control took the position that since the proposed new location is in a business district "general objections in themselves do not justify the issuing authority in refusing to transfer" the license; and he expressed the view that the borough's objections lack merit since "the proposed location of the license is in a business section and the operation of a package goods store

under proper supervision would not, in any way, be detrimental to the community." In reversing the Director's action, the Appellate Division, in a comprehensive opinion by Judge Gaulkin, found that the borough had denied the application because the proposed new location is in the borough's business center where no tavern or package store exists and where the borough has determined that it does "not want one to exist" (59 *N. J. Super.*, at *p.* 313); and it took the position that, absent bad faith, the Director could not interfere with this determination of the borough. 59 *N. J. Super.*, at *p.* 320. In support of their appeal to this court, the appellants urge that the Appellate Division improperly restricted the Director's broad supervisory authority over the borough's regulation of liquor licenses and that under the particular circumstances the Director's action should not have been judicially disturbed.

██ The liquor business is an exceptional one and courts have always dealt with it exceptionally. See *X–L Liquors v. Taylor,* 17 *N. J.* 444, 449 (1955); *Mazza v. Cavicchia,* 15 *N. J.* 498, 505 (1954); *Paul v. Gloucester County,* 50 *N. J. L.* 585, 595 (*E. & A.* 1888). Its inherently far-reaching dangers are evident and the Legislature may prohibit it entirely or may permit it to continue under prescribed restrictions. See *Hudson Bergen County Retail Liquor Stores Ass'n v. Board of Com'rs of City of Hoboken,* 135 *N. J. L.* 502, 506 (*E. & A.* 1947); *Ziffrin v. Reeves,* 308 *U. S.* 132, 138, 60 *S. Ct.* 163, 84 *L. Ed.* 128 (1939); *Crowley v. Christensen,* 137 *U. S.* 86, 91, 11 *S. Ct.* 13, 34 *L. Ed.* 620 (1890). After federal prohibition failed, the Legislature enacted *Chapter* 436 of the *Laws of* 1933 (*R. S.* 33:1–1 *et seq.*) which provided for the strict regulation and control of the liquor traffic in all of its aspects. It established a state Department of Alcoholic Beverage Control headed by a Commissioner (now the Division of Alcoholic Beverage Control headed by a Director) and stipulated that he shall supervise the manufacture, distribution and sale of alcoholic beverages "in such a manner as to promote temperance and

eliminate the racketeer and bootlegger." See *R. S.* 33:1–3. It authorized the Commissioner to issue state licenses for the manufacture and wholesale distribution of alcoholic beverages (*R. S.* 33:1–18) and authorized municipal governing bodies to issue licenses for retail sales within their municipal borders. See *R. S.* 33:1–19. Within their respective spheres the Commissioner and the municipal governing bodies were vested with very broad measures of discretion in passing upon applications for licenses. See *Bumball v. Burnett,* 115 *N. J. L.* 254, 255 (*Sup. Ct.* 1935); *Zicherman v. Driscoll,* 133 *N. J. L.* 586, 588 (*Sup. Ct.* 1946); *Biscamp v. Township Council of Teaneck Tp.,* 5 *N. J. Super.* 172, 174 (*App. Div.* 1949); *Price v. Excise Board of Town of Millburn,* 29 *N. J. Super.* 103, 107 (*App. Div.* 1953).

In establishing New Jersey's system of liquor control, the Legislature wisely stipulated for recognition of varying local sentiments. Thus it provided for referenda on petitions by local voters (*R. S.* 33:1–44 *et seq.*) and it authorized the municipal governing body to adopt ordinances excluding taverns and package stores (*R. S.* 33:1–12) or limiting their number (*R. S.* 33:1–40). Indeed, even where the municipal governing body passes an ordinance limiting the number of taverns and package stores it may reasonably decline to issue a license beyond a number less than the maximum prescribed in the ordinance. See *Bumball v. Burnett, supra,* 115 *N. J. L.,* at *pp.* 255–256. Similarly, the municipal governing body may reasonably decline to issue a license because of the proximity of the premises to a church or school even though the church or school is beyond the 200 foot area outlawed by *R. S.* 33:1–76. See *Price v. Excise Board of Town of Millburn, supra; Hickey v. Division of Alcoholic Beverage Control,* 31 *N. J. Super.* 114, 117 (*App. Div.* 1954); *Presbyterian Church, etc. v. Div. of Alcoholic Bev. Con.,* 53 *N. J. Super.* 271, 281 (*App. Div.* 1958), certif. denied 29 *N. J.* 137 (1959). And it appears clear to us that, consistent with and in furtherance of the foregoing, the municipal governing body may reasonably honor local sen-

timents by declining to license taverns and package stores in designated areas within the municipality. *Cf. Saladino v. City of South Beloit,* 9 *Ill. 2d* 320, 137 *N. E. 2d* 364 (*Sup. Ct.* 1956); *Ellis v. City of Winter Haven,* 60 *So. 2d* 620 (*Fla. Sup. Ct.* 1952); *State ex rel. Mayor v. Cummings,* 178 *Tenn.* 378, 158 *S. W. 2d* 713, 139 *A. L. R.* 837 (*Sup. Ct.* 1942); *Eckert v. Jacobs,* 142 *S. W. 2d* 374 (*Tex. Civ. App.* 1940).

In the *Cummings* case the Tennessee Supreme Court held that the general statutory powers of its municipalities included the authority to confine the sale of alcoholic beverages to designated areas within their municipal borders. 158 *S. W. 2d,* at *p.* 714. See Annotation, *Validity of ordinance or other regulation which confines intoxicating liquor licenses to smaller areas within larger areas in which sale is not prohibited by constitution or statute,* 139 *A. L. R.* 840 (1942). See also 9 *A. L. R. 2d* 877 (1950). In the *Ellis* case the Florida Supreme Court rejected the contention that a city ordinance prohibiting the sale of near beer within a designated area was invalid because it did not meet the procedural requirements relating to zoning ordinances; in the course of its opinion the court noted that many citizens had advocated the passage of the ordinance and that the evidence as to the proximity of churches and schools and the other circumstances was sufficient to show that the ordinance was "reasonably necessary for the protection of the public health, safety, morals and general welfare." 60 *So. 2d,* at *p.* 623. In the *Eckert* case the Texas Court of Civil Appeals, in sustaining a zoning ordinance which excluded the sale of beer from a designated area, pointed out that it was "immaterial whether the area involved was wholly commercial or partly residential and partly commercial," since it is common knowledge that the sale of intoxicating beverages is accompanied by "objections not common to other types of commercial enterprises." 142 *S. W. 2d,* at *p.* 377. And in the *Saladino* case the Illinois Supreme Court, in sustaining a zoning ordinance which prohibited taverns while permitting other busi-

nesses in the area, remarked that "many reasons related to the public welfare, safety and morals may be suggested which cause it to be both desirable and reasonable that the shopping and service areas of a city's business districts to which its citizens are drawn to fulfill their daily needs, be kept from the influences attendant to tavern operations." 137 *N. E.* *2d,* at *p.* 367.

Although New Jersey's system of liquor control contemplates that the municipality shall have the original power to pass on an application for a tavern or package store license or the transfer thereof, the municipality's action is broadly subject to appeal to the Director of the Division of Alcoholic Beverage Control. The Director conducts a *de novo* hearing of the appeal and makes the necessary factual and legal determinations on the record before him. See *Cino v. Driscoll,* 130 *N. J. L.* 535 (*Sup. Ct.* 1943); *Township Committee of Lakewood Tp. v. Brandt,* 38 *N. J. Super.* 462, 467 (*App. Div.* 1955); *Neiden Bar and Grill v. Municipal Board of Alcoholic Beverage Control of the City of Newark,* 40 *N. J. Super.* 24, 28 (*App. Div.* 1956). Under his settled practice, the Director abides by the municipality's grant or denial of the application so long as its exercise of judgment and discretion was reasonable. See *Tube Bar, Inc. v. Commuters Bar, Inc.,* 18 *N. J. Super.* 351, 355 (*App. Div.* 1952); *Hudson Bergen County Retail Liquor Stores Ass'n v. Board of Com'rs of City of Hoboken, supra,* 135 *N. J. L.,* at *p.* 505; *cf. R. S.* 33:1-38. However, where the municipal action was unreasonable (*Hudson Bergen County Retail Liquor Stores Ass'n v. Board of Com'rs of City of Hoboken, supra*) or improperly grounded (*South Jersey Retail Liquor Dealers Ass'n v. Burnett,* 125 *N. J. L.* 105, 107 (*Sup. Ct.* 1940)) the Director will grant such relief or take such action as is appropriate. See *N. J. S. A.* 33:1-22; *N. J. S. A.* 33:1-26; *R. S.* 33:1-38; *Mayor & Council of Borough of Totowa v. Chicken Barn, Inc.,* 41 *N. J. Super.* 459 (*App. Div.* 1956). On judicial review, the court will generally accept the Director's factual findings (see *Florence Methodist Church v.*

*Township Committee, Florence Tp.,* 38 *N. J. Super.* 85 (*App. Div.* 1955); *cf. R. R.* 4:88–13; *New Jersey State Board of Optometrists v. Nemitz,* 21 *N. J. Super.* 18, 27 (*App. Div.* 1952)) and not interfere with his action so long as it was not unreasonable or illegally grounded. See *Rajah Liquors v. Division of Alcoholic Bev. Control,* 33 *N. J. Super.* 598, 600 (*App. Div.* 1955), certif. denied 18 *N. J.* 204 (1955); *cf. Bivona v. Hock,* 5 *N. J. Super.* 118, 120 (*App. Div.* 1949).

In the instant matter, the Director grounded his action on the view that the general objections advanced by the municipality were insufficient since the proposed new location was in a business section and the operation of a package store under proper supervision would not, in his opinion, be detrimental to the community. This view erroneously disregarded the municipal governing body's authority to decline to license the operation of any taverns or package stores in Fanwood's business center. The record leaves no room for doubt that widespread local sentiment favors keeping the area free of taverns and package stores and it matters little that this sentiment may have resulted in part from moral precepts and in part from the general objections voiced in the testimony of the councilmen. The fact is that the sentiment does exist and in honoring it the governing body did not act at all unreasonably. The interests of effective liquor control are best advanced where the municipal licensing program displays fair regard not only for the convenience of residents who purchase alcoholic beverages but also for the sentiments of residents who are unsympathetic or hostile to their sale. *Cf. People ex rel. Morrison v. Cregier,* 138 *Ill.* 401, 28 *N. E.* 812, 815 (*Sup. Ct.* 1891); *Saladino v. City of South Beloil, supra,* 137 *N. E. 2d,* at *pp.* 366–367.

Fanwood's package store and taverns along its outskirts have apparently been sufficient, in the opinion of the municipal governing body, to meet the needs of its people and satisfy the public interest (*cf. Mauriello v. Driscoll,* 135 *N. J. L.* 220, 221 (*Sup. Ct.* 1947)) and, while the transfer

of the package store to its business center would presumably serve as an added convenience to some of its residents, this factor was fairly considered by the governing body to be outweighed by the sentiments in opposition to the transfer. Previous applications for taverns and package stores in the business center have been consistently denied and, while the Director suggests that they could not in any event have been granted because of the limitation in *N. J. S. A.* 33:1–12.14, there is evidence indicating that, without considering whether the statutory limitation was applicable, the councilmen denied them because they opposed the licensing of any package stores and taverns in the business center. The Director also seems to suggest in his brief that, while a policy against taverns in the business center might perhaps be justified, a policy against package stores is unjustifiable since "the evils incident to the unrestrained operation of a tavern do not inhere in the operation of a package store." We may assume that the dangers which attend the operation of a package store are generally less than those which attend the operation of a tavern but this does not at all mean that there are no substantial dangers or that the opposing sentiments of the residents do not extend fully to package stores as well as taverns.

No formal statement of reasons by the governing body accompanied the denial of Mr. Rocco's application although two councilmen did express themselves at the time. The statute is silent (see *R. S.* 33:1–24) and the Director has not thus far imposed any specific requirement for a formal statement of reasons although there seems to be little doubt as to his power to do so (*R. S.* 33:1–23; *cf. X–L Liquors v. Taylor, supra,* 17 *N. J.* 444) or as to the wisdom of such a requirement generally. See 2 *Davis, Administrative Law* § 16.01 *et seq.* (1958); *cf. Family Finance Corp. v. Gough,* 10 *N. J. Super.* 13, 24 (*App. Div.* 1950); *Wharton Sand & Stone Co. v. Township of Montville,* 39 *N. J. Super.* 278, 283 (*App. Div.* 1956). In the instant matter, the Director did state, in the Conclusions and Order filed by him pursuant

to *R. S.* 33:1–38, that in fairness to the applicant the municipal governing body should have given its reasons at the time of its denial of the application. But he did not remand the matter and the record before him, which included an answer by the municipal governing body formally setting forth its reasons and individual testimony by all of the councilmen as to their reasons, is now before this court. We are satisfied that the applicant may fairly be considered to have suffered no prejudice by the absence of a formal statement of reasons by the municipal governing body at the time of the denial of his application. *Cf. Neiden Bar and Grill v. Municipal Board of Alcoholic Beverage Control of the City of Newark, supra,* 40 *N. J. Super.,* at *p.* 29.

■ Finally, reference may be made to the fact that there were members of the borough council who were also members of the objecting Presbyterian Church. It seems to us that if a quorum could have been convened without such councilmen then that course would have been the proper one for it is important that the appearance of objectivity and impartiality be maintained as well as their actuality. *Cf. Griggs v. Princeton Borough,* 33 *N. J.* 207, 219 (1960) ; *Zell v. Borough of Roseland,* 42 *N. J. Super.* 75, 81 (*App. Div.* 1956). However, five of the six councilmen were members of the Presbyterian Church and their withdrawal would have left no quorum. See *N. J. S. A.* 40:88–1; *cf. Drozdowski v. Mayor and Borough Council of Borough of Sayreville,* 133 *N. J. L.* 536 (*Sup. Ct.* 1946). At the time of his application Mr. Rocco did not seek disqualification of the councilmen (see *Marquette Cement Mfg. Co. v. Federal Trade Commission,* 147 *F.* 2d 589, 592 (7 *Cir.* 1945), reversed on other grounds *sub nom., Federal Trade Com. v. Cement Institute,* 333 *U. S.* 683, 68 *S. Ct.* 793, 92 *L. Ed.* 1010 (1948), rehearing denied, 334 *U. S.* 839, 68 *S. Ct.* 1492, 92 *L. Ed.* 1764 (1948) ; *cf. Rinaldi v. Mongiello,* 4 *N. J. Super.* 7, 12 (*App. Div.* 1949)), nor has he asserted any disqualification in his brief before this court. He has, however, suggested that the membership of the councilmen in the Presbyterian Church

was a proper factor for the Director's consideration on his review of the denial of the application. The Director was fully aware of all of the circumstances and undoubtedly carefully scrutinized the entire record before him. He did not at any time question that there was widespread local sentiment in favor of keeping Fanwood's business center free of taverns and package stores, nor did he question the conscientiousness of the members of the governing body in honoring that sentiment. Mayor Todd, who was not a member of the Presbyterian Church, testified that all previous applications for the licensing of taverns and package stores in the area were denied and that the granting of the application would be contrary to the feeling of most of the people of Fanwood, "a thinking with which all of the gentlemen of the council concurred." Councilman Agnoli, the only member of the municipal council who was not a member of the Presbyterian Church, testified that he was absent when the application was considered and that if he had been present he "would have voted against it." At the hearing before the Director, there was no testimony establishing that the municipal governing body's determination to keep its business center free of package stores and taverns was in any respects unreasonable, and, while the Director did conclude to reverse its denial of the application, we have hereinbefore indicated why we consider that his action was improperly grounded and was soundly set aside by the Appellate Division.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For reversal*—None.