JOINT MEETING NO. 1 FOR SOLID WASTE DISPOSAL, PLAINTIFF-APPELLANT, v. ERIE LACKAWANNA RAILROAD COMPANY, ET AL., DEFENDANTS, AND COUNTY OF BERGEN, INTERVENOR-RESPONDENT.

COUNTY OF BERGEN, PLAINTIFF-RESPONDENT, v. ERIE LACKAWANNA RAILROAD COMPANY, ET AL., DEFENDANTS, AND JOINT MEETING NO. 1 FOR SOLID WASTE DISPOSAL, DEFENDANT-APPELLANT.

JOINT MEETING NO. 1 FOR SOLID WASTE DISPOSAL, PLAINTIFF-APPELLANT, v. TOWNSHIP OF LYNDHURST, DEFENDANT-RESPONDENT, AND COUNTY OF BERGEN, INTERVENOR-RESPONDENT.

Argued June 3, 1964 and September 9, 1964.
Decided October 19, 1964.

282

*Mr. William P. Reiss* argued the cause for the plaintiff and defendant-appellant Joint Meeting No. 1 For Solid Waste Disposal (*Messrs. Pitney, Hardin & Kipp,* attorneys; *Mr. Harold John Wallum, Jr.,* on the brief).

*Mr. James A. Breslin* argued the cause for the defendant-respondent Township of Lyndhurst.

*Mr. Nelson G. Gross* argued the cause for the plaintiff-respondent and intervenor-respondent County of Bergen.

PER CURIAM. On September 13, 1963 Joint Meeting No. 1 For Solid Waste Disposal, created pursuant to the Consolidated Municipal Service Act (*N. J. S. A.* 40:48B–1 *et seq.*), filed a complaint seeking condemnation of 328 acres of Erie Lackawanna Railroad Company land located largely in the Township of Lyndhurst south of the railroad tracks. Shortly thereafter the County of Bergen filed a complaint seeking condemnation of the same land. Joint Meeting advised Lyndhurst that it intended to acquire the railroad land for the disposal of solid waste; the county desired the land for the same purpose. On October 7, 1963 the governing body of Lyndhurst, acting under *N. J. S. A.* 40:48B–2.1(i), adopted a resolution to the effect that acquisition of the land for such use "would adversely affect the governmental operations and functions and the exercise of the police powers of the Township of Lyndhurst."

After hearing argument on an order to show cause and considering the submitted affidavits which disclosed no material factual disputes, Judge Leyden concluded that the condemnation proceeding instituted by Joint Meeting should be dismissed and that commissioners in condemnation should be appointed in the proceeding instituted by the county. His reasons, set forth in *Bergen County v. Erie Lackawanna R. R.,* 81 *N. J. Super.* 344 (*Law Div.* 1963), included a determination that in view of Lyndhurst's resolution, Joint Meeting could not legally acquire the land for the disposal of solid

waste. See 81 *N. J. Super.*, at *p.* 349; *N. J. S. A.* 40:48B–2.1(i). Joint Meeting filed notices of appeal to the Appellate Division from the orders entered by Judge Leyden, but evidently recognizing that its position could not be sustained if the Lyndhurst resolution remained in effect, it had also instituted an action in lieu of prerogative writ to set it aside. After its appeals from Judge Leyden's orders were certified by us on our own motion, we directed that the County of Bergen be permitted to intervene in the prerogative writ action and that that matter proceed forthwith to trial and determination. Trial was duly held before Judge Schneider who filed an opinion in favor of Lyndhurst.

In the course of his opinion, Judge Schneider explicitly found that Joint Meeting had not established "any arbitrary, capricious or unreasonable action in the adoption of the resolution." Joint Meeting filed its notice of appeal to the Appellate Division from the judgment against it in the prerogative writ action and, after certification of this appeal on our own motion, it was argued along with the appeals in the condemnation actions. It is clear that, if the judgment refusing to set aside Lyndhurst's resolution is sustained by us, Joint Meeting is not entitled to prevail in its condemnation proceeding and has no legal standing in the county's condemnation proceeding. We proceed therefore to consider Joint Meeting's contention that the trial judge erred in refusing to set the resolution aside as arbitrary, capricious or unreasonable or as otherwise invalid.

Joint Meeting was established by a contract dated August 10, 1961 between the Borough of Glen Ridge, the Township of Cedar Grove, the City of Orange, the Town of Montclair, the City of East Orange, the Town of Bloomfield and the Borough of Verona, all municipalities in Essex County. Although some land in Essex County was available for sanitary landfill purposes, its location was not considered suitable by Joint Meeting which instituted steps toward acquisition of the railroad land in Lyndhurst. Its representatives negotiated with the railroad and also met with Mayor Garde of

Lyndhurst and with several members of Lyndhurst's Board of Commissioners. Testimony was introduced by Joint Meeting to indicate that during these meetings it offered to make payments to Lyndhurst in lieu of taxes on the basis of acquisition price and costs of improvements and that Lyndhurst's representatives invited Joint Meeting to submit written proposal which would be more attractive to the municipality. Testimony was also introduced by Joint Meeting to indicate that Lyndhurst claimed ownership of an adjacent tract and had suggested a willingness to lease that tract to Joint Meeting for sanitary landfill purposes provided a proposal sufficiently attractive to the municipality was made.

Mayor Garde, in his testimony before Judge Schneider, acknowledged his meetings with representatives of Joint Meeting, his expression of concern for loss of ratables, and his discussion of a lease of the adjacent tract which Lyndhurst claimed to own. But he stressed that the meetings were simply exploratory, that no determinations or commitments were made, and that no specific written proposal was submitted by Joint Meeting. He testified at length in support of the October 7th resolution and his objections to the use of the railroad land as a dumping area. He referred to difficulties in controlling the smoke, fire and odors and recalled that in 1953, when he was Lyndhurst's Director of the Department of Public Affairs, he had discontinued its dumping area south of the railroad tracks because of the serious fire hazards, the noxious odors and the vermin infestation. When he was asked whether Lyndhurst would object to the county's proposed operation of the dump he stated that it would, although he indicated that if Lyndhurst could not lawfully prevent dumping operations in the area it would prefer that they be done by the county rather than Joint Meeting.

Mr. Polito, Commissioner in charge of Lyndhurst's Public Affairs Department, testified that he voted for the October 7th resolution and believed that the proposed operation of Joint Meeting would adversely affect the municipality's governmental operations. He referred to the need of furnishing

additional municipal fire and police protection, to the applicable health problems, and to the fact that the proposed "dumping area was to be located in the southeast of Lyndhurst, which is an area composed of a great deal of our industrial plants and it is adjacent to a residential area." He described the proposed dumping area as a "problem area," located in a hollow and lacking necessary cross-winds, and pointed out that the only dumping area now being used in Lyndhurst is located north of the railroad tracks and that that area is being used primarily, although not exclusively, for Lyndhurst's own waste disposal. He referred to the several occasions on which he had met with Joint Meeting's representatives and stated that the meetings were exploratory in nature and that he was interested in ascertaining Joint Meeting's proposed mode of operation. He testified that it was after studying the entire situation and conferring with the other officials that he concluded to support the October 7th resolution.

Mr. Curcio, Commissioner in charge of Lyndhurst's Parks and Public Property Department, testified that he had voted for the resolution and that the reasons he gave were "the nuisance reason, the health reason, there was a problem for police and the fire department." He also testified that he had never met with any of Joint Meeting's representatives and had never authorized any commitments to them. Mr. Russo, Commissioner in charge of Lyndhurst's Public Works Department, voted for the resolution and testified that he was in substantial agreement with the supporting reasons advanced by Mayor Garde. Mr. Bogle, the remaining member of Lyndhurst's Board of Commissioners, also voted for the resolution but was not called to testify.

During the course of its prerogative writ action, Joint Meeting submitted interrogatories which requested that Lyndhurst set forth in detail the facts upon which it rested its determination that Joint Meeting's proposed operation would adversely affect the municipality's governmental operations and functions and the exercise of its police powers. In re-

sponse, Lyndhurst referred to its own earlier operation in the area which was discontinued for health reasons and to the traffic hazards, the access problems, the need for fire and police protection, the noxious odors and smoke, and the increased noise in the area "which is already subject to noises emanating from the many factories and industries in that area." In its concluding paragraph, Lyndhurst set forth that its present dumping area is confined to the section of the meadowland north of the railroad and that the welfare of the community requires that the dumping area not be extended at the present time to the area south of the railroad. Subsequent to the oral argument of Joint Meeting's appeals before this Court, Lyndhurst's counsel advised of the adoption of a zoning ordinance amendment which was apparently designed to prohibit expressly all dumping and solid waste disposal on designated land south of the railroad including the 328 acres sought to be acquired by Joint Meeting.

▮▮ We accept Joint Meeting's contention that *N. J. S. A.* 40:48B-2.1(i) did not give Lyndhurst an absolute veto which it could exercise for no reason or for an invalid reason such as hostility to Joint Meeting because it is composed of non-Bergen County communities or because it occupies a tax-exempt status. The Legislature did not speak in terms of absolute veto but set forth an express standard necessitating a finding that the proposed operation would adversely affect the municipality's governmental operations and functions and the exercise of its police powers. Lyndhurst made this finding in its October 7th resolution. Joint Meeting contends that the resolution was fatally defective because it did not embody detailed reasons or factual findings but the statute contains no such requirement and, in any event, Joint Meeting was fully advised of the pertinent facts and reasons by the answers to interrogatories and the trial testimony. See *Borough of Fanwood v. Rocco,* 33 *N. J.* 404, 416–417 (1960).

▮ Joint Meeting further contends that the resolution was invalid because Lyndhurst "cannot prevent the use of the Erie Tract as a sanitary waste disposal." This assumes that the

county will be permitted to use the tract in accordance with its plans. Lyndhurst has voiced its opposition to the county's plans, has adopted a zoning ordinance amendment apparently designed to prohibit expressly all dumping in the area, and has asserted in its brief that if the county attempts to use the land for dumping purposes "the governing body of Lyndhurst will then be obligated to take whatever legal action it determines to be appropriate to protect the welfare of the community." We, of course, are not at liberty to express any opinion in this proceeding as to issues which may be raised in any future litigation between the county and Lyndhurst; such litigation will not bear on action under *N. J. S. A.* 40:48B–2.1(i) which is the sole statutory provision being passed on here.

██ The reasons advanced by Lyndhurst in support of its October 7th resolution relate primarily to the public health and safety and are clearly within the broad statutory standard expressed in *N. J. S. A.* 40:48B–2.1(i). The trial judge was satisfied that Lyndhurst's officials acted in good faith and that the evidence relating to the preliminary negotiations did not suggest the contrary. With respect to those negotiations he observed that while Lyndhurst's officials were willing to consider Joint Meeting's proposal they "never implied or agreed that the proposal was acceptable" and they carefully considered all pertinent matters before concluding that the interests of the municipality called for adoption of the October 7th resolution. Joint Meeting does not dispute that it had the affirmative burden of showing that the resolution was arbitrary, capricious or unreasonable. See *Earruso v. Board of Health, E. Hanover Twp.,* 120 *N. J. L.* 463, 469 (*Sup. Ct.* 1938); *Township of Dover v. Witt,* 7 *N. J. Super.* 259, 262 (*App. Div.* 1950). The trial judge determined that Joint Meeting had not carried its burden and nothing has been presented which would warrant appellate interference with that determination.

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.