THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., TRANS-FEREE-RESPONDENT, v. MAYOR AND COUNCIL OF THE BOROUGH OF POINT PLEASANT BEACH, ISSUING AUTHOR-ITY-APPELLANT, AND VETRINI & CAPESTRO, INC., AND CARL BARKALOW, INTERVENOR-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 13, 1987—Decided August 3, 1987.

Before Judges DEIGHAN, HAVEY and MUIR, Jr.

*David S. Piltzer* argued the cause for appellants (*Piltzer & Piltzer,* attorneys for appellant Vetrini & Capestro, Inc. and Carl Barkalow); *Edward V. Murachanian* appeared for appellant Mayor and Council of the Borough of Point Pleasant Beach (*Hiering and Hoffman,* attorneys); (*David S. Piltzer* and *Ronald E. Hoffman* on the joint brief).

*Saul A. Wolfe* argued the cause for respondent A & P; (*Skoloff & Wolfe*, attorneys; *Saul A. Wolfe*, of counsel and on the brief).

*Lee Barry*, Deputy Attorney General, argued the cause for respondent Division of Alcoholic Beverage Control; (*W. Cary Edwards*, Attorney General, attorney; *Michael R. Clancy*, Deputy Attorney General, of counsel; *Lee Barry* on the brief).

The opinion of the court was delivered by

MUIR, Jr., J.A.D.

This appeal focuses on the authority of the Director of the Division of Alcoholic Beverage Control (Director) to overrule a municipal denial of an application to relocate an inactive or "pocket" plenary retail distribution license (D license).

The Council of the Borough of Point Pleasant Beach (Council) denied the application of the Great Atlantic and Pacific Tea Company, Inc., (A & P) to locate its D license in a shopping center on Route 35 (Richmond Avenue). A & P filed an appeal with the Director. Thereafter the Council enacted a 1500–foot distance-between-licensed-premises ordinance. The ordinance disqualified the proposed A & P site as a liquor store. An Administrative Law Judge (ALJ) upheld the denial. He also held the transfer barred by the distance-restriction ordinance. Subsequently, the Council amended the ordinance, creating exceptions to the 1500–foot minimum distance requirement. The exceptions applied only to liquor licenses operating from existing licensed premises.

Then, after the Director remanded to the ALJ to consider applicability of the amended ordinance, the Director, *ex parte*, decided to hear that remaining issue, whereupon he granted the A & P application, holding the distance-restriction ordinance inapplicable.

After filing of the appeal, we remanded, requiring the Director to consider the four days of testimony before the ALJ previously not considered by the Director. The Director, in a supplemental opinion, affirmed his original holding.

The Mayor and Council of the Borough and a Borough licensee appeal. We affirm.

The Borough of Point Pleasant Beach is a trapezoidal-shaped community fronting on the Atlantic Ocean. It is approximately two miles across the shore front and a mile deep. It has 5500 permanent residents. It has 21 issued liquor licenses. Only one of those licenses, the A & P license, has no assigned or licensed premises. The A & P lost its former licensed premises due to a refusal of the landlord to renew its lease. The former 15,000 square foot A & P supermarket, 700 square feet of which were devoted to liquor sales, is now a bank.

Of the remaining licenses, fourteen are plenary consumption licenses (C licenses); four are "Broad C" (combined consumption and package stores) and two are plenary distribution or package store licenses (D licenses). All licenses have the privilege to sell package goods.

A & P spent approximately two years searching for a new site. Finally it selected the proposed site on Richmond Avenue, some nine blocks from its former location, in a shopping center serving full-time residents of the Borough. The proposed site contained 10,000 square feet.

On May 24 and June 8, 1983, the Council held a hearing on A & P's relocation application. The hearing opened with the reading of four letters from objectors. Two letters came from liquor licensees. The remaining two letters came from persons who argued there was no need for the license.

The Council then heard from Richard Barkalow, intervenor on appeal. Barkalow owns Bar Car Liquors, a package store located 320 feet, as the pedestrian would walk (the legal basis for measuring distances between licensed establishments), from the proposed A & P site. Barkalow gave as his reasons for opposition: "I do not believe that I can survive economically;" "I would be in bankruptcy;" and "... it would run me into the ground."

The Council then heard from other objectors, some of whom worked for or were owners of licensed premises or were customers of Barkalow. Their objections related essentially to economic competition and lack of need for another liquor store in the Borough.

A & P then had the opportunity to present its application. The first A & P witness described the difficulty in finding a location. He then described the plans to renovate the "eye sore" vacant building, a former Food Fair Supermarket, proposed for its new store. He denied any plans to utilize predatory pricing to put economic pressure on other liquor stores.

At the conclusion of the testimony of the first A & P witness, Councilman DiCorcia, who voted to deny the relocation application, stated it was his understanding there was currently no ordinance to protect "our mom and pop stores; specifically in this case, Mr. Barkalow and his liquor license from being infringed upon by other applicants." DiCorcia then asked Barkalow's attorney, "... if we did have a proximity ordinance in the Borough of Point Pleasant Beach, do you feel this would be beneficial in this *particular* case to your client?" [Emphasis added.] Counsel responded in the affirmative. The Mayor then stated that he was concerned over a "liquor store alley" developing and that he did not want the town to become the liquor store capitol of Monmouth and Ocean Counties with price competition.

Another A & P representative testified regarding the advantages the proposed store would have over other existing liquor stores in serving the public. A real estate expert then testified to the unsuitability of other proposed sites. He stated A & P's presence in the area would enhance it and benefit the area generally.

Prior to voting on the application, several members of the Council spoke for denial. They noted as grounds for denial the "plethora of licenses" in the Borough, that Borough residents'

needs were met by existing licenses and that the store presented traffic hazards.

The Mayor, who could not vote on the resolution, stated there were enough liquor stores in the Borough and that A & P had not shown any benefit to community welfare arising from the transfer.

The resolution of denial provided:

a. The transfer of plenary retail distribution license # 1525-44-008-001 to 1205 Richmond Avenue would not serve the public safety and welfare since the transfer of said license to said area would allow too great concentration of 'D' licenses in this portion of the municipality.

b. That the creation of a 'liquor alley' in this area of Point Pleasant Beach will occur as a result of the installation of this large scale 'Supermarket' type of liquor store contrary to the public good and welfare of the residents of Point Pleasant Beach.

c. That there are currently too many alcoholic beverage licenses located in the Borough of Point Pleasant Beach and the reactivation of this license after a period of three (3) years would be contrary to the best interests of the community in light of the fact that said license will be going from a previous 700 square foot operation to an approximate 10,000 square foot operation. Such an operation would be contrary to the public health, safety, and welfare of the municipality.

During the hearing before the ALJ, the Council added community sentiment against the transfer as an additional reason for denial, relying on *Lyons Farms Tavern v. Mun. Bd. Alc. Bev., Newark*, 55 *N.J.* 292 (1970) and *Fanwood v. Rocco*, 33 *N.J.* 404 (1960).

The ALJ heard testimony from the Mayor, a councilman, a former councilman, Barkalow, a local minister, a local resident and friend of Barkalow who sells Barkalow insurance, and a local hardware store owner in support of the denial. The ALJ also received two petitions against the transfer, one of which had been placed in Barkalow's store after the initial hearing. The second was offered by the resident and friend of Barkalow. Neither petition contained reasons why the petitioners who signed objected to the transfer.

The Mayor expressed the view there were too many liquor stores in town. He also alleged the increased size of the store

would create traffic on a busy thoroughfare, but acknowledged any permitted use would create similar traffic. In expressing personal views, the Mayor stated he would not object to A & P operating in the Borough so long as it is "not next door to one [liquor store] that's already there."

The councilman opined the transfer created too great a concentration of D licenses. He defined "liquor alley" as two or three liquor stores in a row, listing A & P, Bar Car and Moby Dick. He stated he would not oppose A & P transferring to a suitable location. He also stated he felt the town currently well served and without the need for a large liquor store and the consequent traffic. He said he spoke to people in town (it is not clear whether this was before or after the Council's denial), who had concerns over traffic, size of the store and lack of necessity to have adjoining package stores.

Barkalow offered a petition he had placed in his store after the Council's denial. He felt a package store located in another part of town would better serve the town.

The remaining witnesses expressed opinions the Borough had too many licenses and had adequate liquor licensees to serve its needs. They also expressed their opposition as based on the nearness of the licenses and the family character of the town being changed by the A & P store.

A & P witnesses testified liquor store traffic would be 60% less than a food store. One witness stated he failed to see any concentration problem since A & P had been located near other licensees for years. He also noted A & P would be farther from Point Liquors, a package store on Richmond Avenue, than it previously had been.

A & P offered testimony of the Newark Chief of Police, experienced in liquor law enforcement, who stated clustering of package stores presented no problem. He also stated store size created no problems.

The ALJ found reasons (b) and (c) of the Borough Council resolution unsupported in the record. He concluded, however,

the Borough presented sufficient evidence to sustain reason (a) and to demonstrate sufficient public sentiment existed to support the denial. He also found the distance restriction ordinance, as originally adopted, barred A & P's application.

The Director adopted the ALJ's finding that there was insufficient evidence to support reasons (b) and (c) of the resolution. He disagreed with the remaining facets of the ALJ's ruling.

The Director concluded, in his first opinion, that the Borough denied A & P's application "not on the basis of any positive factors or that there was no public need or necessity, but rather, solely to negate the Appellant's efforts to reactivate its validly issued and renewed license in order to protect other licensees against a further competitor." He found the denial unsubstantiated and discriminatory. In his second opinion, following our remand, he found "at best, one can presume the Issuing Authority [the Borough] was confused by the facts, and that they had an unarticulated supposition (and possibly hope) that denial might lead to the loss of this license. At worst, there was an attempt to protect a local licensee from conjectured adverse economic impact by a nationally owned store.... Neither basis can form a supportable reason to deny the requested transfer."

The appeal challenges the Director's decision on four grounds:

(1) The record supports the governing body's denial and the Director improperly substituted his judgment for the discretion of the governing body;

(2) The Director erred in not applying the distance-between-premises ordinance;

(3) The Director erred in refusing to consider four days of testimony before the ALJ;

(4) The Director erred in taking over the hearing on an *ex parte* application.

We find only the first two issues merit consideration. The third issue is moot. The fourth issue is clearly without merit. *R.* 2:11–3(e)(1)(E). *See N.J.A.C.* 1:1–5.1(b); *In re Kallen,* 92 *N.J.* 14, 20 (1983).

## I.

We turn first to the contention the Director improperly substituted his judgment for the discretion of the Council.

■ The role of the local authority and the Director on liquor license transfers is fairly well defined. The local authority, vested with wide discretion to act in the public interest, has primary responsibility for making the initial determination. *Lyons Farms Tavern v. Mun. Bd. of Alc. Bev., Newark,* 55 *N.J.* at 302–03 (1970). Once it has made its decision, its exercise of discretion should be accepted on review so long as that exercise is reasonable. *Fanwood v. Rocco,* 33 *N.J.* at 414 (1960).

The municipal ruling, however, is subject to reversal by the Director, after a *de novo* hearing, if there is no reasonable support for it to be found in the record. *Lyons Farms Tavern,* 55 *N.J.* at 303.

■ The municipal authority may respond to public sentiment as grounds for its action. *Id.* at 306–07; *Fanwood,* 33 *N.J.* at 414. That sentiment, however, must have some reasonable association "with dangers to the public health, safety, morals and general welfare commonly recognized as incidents of the sale and consumption of alcohol[.]" *Lyons Farms Tavern,* 55 *N.J.* at 307. Further, the public sentiment must be substantially widespread in the community, *see id.* at 306–07, or must be evident by a long-established pattern of community conduct which reflects such sentiment. *See Fanwood,* 33 *N.J.* at 415–16.

■ Neither the public sentiment nor the rationale for transfer denial may be based on the desire to eliminate an existing

liquor license, *see Tp. Committee of Lakewood Tp. v. Brandt,*
38 *N.J.Super.* 462, 466 (App.Div.1955), or the desire to provide
other liquor establishments with protection against economic
competition. This is so because a liquor license is a property
interest of value subject to protection against unreasonable and
illegally grounded discriminatory conduct by the issuing author-
ity. *See id.* at 466; *Common Council of Hightstown v. Hedy's
Bar,* 86 *N.J.Super.* 561, 564 (App.Div.1965).

The right to such protection is particularly significant when
dealing with an inactive license where the refusal to allow a
relocation can effectively cause loss of a valuable property
interest. The Director emphasized the latter point in his rul-
ings.

In making his rulings, the Director reviewed the testimony of
all the witnesses and other evidence submitted, including a map
of the Borough showing the location of all existing licensed
premises and A & P's proposed site. He further considered the
decisions in *Fanwood* and *Lyons Farms Tavern,* noting the law
set forth and factual distinctions from the case before him.

The Director first found no widespread sentiment
against the transfer. He gave little weight to the petitions
because they contained no "specific reasons for signing [of the]
petitions." [1] He noted only ten persons objected and they were
either friends or associates of existing licensees or persons who
objected on the grounds of increased traffic or no need for
further operating liquor licenses in the Borough. He concluded
the record established no support for the added traffic conten-
tion and that the grounds for the anti-transfer sentiment lacked
specific relationship to public health, safety and welfare to
constitute legally recognizable public support. He concluded
the "supermarket," "liquor alley" and *de facto* expansion con-
tentions were evidentially insufficient to demonstrate public
health, safety, morals or welfare grounds for denial. He noted

---

[1] Appellants do not provide copies of the petitions in the appeal record.

the absence of any evidence that the area involved had any loitering, littering or teenager congregating problems. He cited to the fact that other than Intervenor Bar Car (Vetrini & Capestro, Inc./Carl Barkalow) "there is no other licensee located within 1200 feet south on Richmond Avenue (at which point Eugenie Inc. T/A Moby Dick is located) [as result of an exception adopted in the amendatory ordinance] or over 2000 feet north on Richmond Avenue (at which point Carnotti's, Inc. T/A Europa South is located)."

On the Council's concentration of D licenses reasoning, the Director noted that (1) all 21 licensees in the Borough had package selling privileges; (2) the three D licenses have always been located in the area of either Richmond or Arnold Avenues and no other areas of town; (3) the local officials who testified were confused as to what constituted a package store when they concluded the transfer would result in a concentration of D licenses; (4) two councilmen and the Mayor thought the Borough had too many licenses and (5) the Council had no evidence on the scope of package good sales by existing licensees and made no attempt to determine the location of broad C package good stores or the service they provided to the community. He also noted the Borough Clerk testified she "had no recollection of any place-to-place transfer application *ever being denied* since her affiliation with the Borough in 1970." [Emphasis supplied.] These determinations, when combined with the record of the Council hearing, led to the conclusions the Council improperly sought to protect existing licensees against economic competition and sought to create circumstances making relocation of the A & P license extremely difficult, to the end it might eliminate the license.

Upon judicial review, the rulings of the Director encompassing his findings of fact and conclusions must be accepted unless unreasonable or illegally grounded. *Lyons Farms Tavern*, 55 *N.J.* at 303. Such acceptance must encompass any legitimate

inferences drawn from the evidence in the record. *Common Council of Highstown v. Hedy's Bar,* 86 *N.J.Super.* at 563.

Based upon our review of the record, we find the Director's determinations reasonable and legally grounded. *See Lyons Farms Tavern,* 55 *N.J.* at 303.

Reason (d) of the resolution, "that there are currently too many alcoholic beverage licenses located in the Borough," when read in concert with comments of the local officials participating at the original hearing and with the continuance of the reasoning that the Borough had sufficient licenses to serve local citizens' needs, lends considerable support for the Director's conclusions regarding the reasons the Council denied the application. There is a "sense of wrongness" in the motivations of the Borough officials from the outset. Sustenance for that reasoning rose to a more confirmatory stage when the paucity of evidence related to public health, safety and welfare incident to liquor sales and consumption became evident on appeal to the Director.

We recognize the deference courts must give to the intimate awareness of the needs and interests of a neighborhood in relation to projected increase in liquor traffic. *Lyons Farms Tavern,* 55 *N.J.* at 307. The deference cannot be absolute, however. When needs and interests are projected in a manner that suggests they have no reasonable association with dangers to the public health, safety, morals and general welfare, but are more significantly related to reasons which have no legally sufficient relationship to the increase of liquor traffic, the deference must give way to a just determination.

## II.

We turn next to the contention that the Director erred in refusing to apply the distance-between-premises ordinance.

The ordinance did not exist at the time of A & P's application, apparently because the governing body never considered the issue. The prospect of its adoption, however, be-

came evident when Councilman DiCorcia interrupted A & P's presentation at the initial hearing and expressed his understanding there was currently no ordinance to protect "our mom and pop stores."

The Council adopted the ordinance, in effect at the time the Director reviewed the issue, in two stages. The first stage came in an ordinance adopted August 2, 1983, two months after the Council denied the A & P transfer application, and one month after A & P advised of its appeal to the Director.

In its pertinent provisions, the ordinance provided:

Section 1. Purpose. The purpose of this Ordinance is to protect the health, safety, and welfare of the residents of Point Pleasant Beach by creating a required distance between certain alcoholic beverage establishments. By creating this required distance it is felt the public welfare would be best served by avoiding too great a concentration of alcoholic beverage licenses in one particular area of the municipality.

Section 2.

· · · · · · · ·

A. From and after the date of the adoption of this Ordinance it shall be unlawful for any plenary retail alcoholic beverage consumption license or plenary retail alcoholic beverage distribution license to be located within 1500 feet of another premises holding either of said licenses.

The town fathers, in their testimony on the appeal to the Director, acknowledged they selected 1500 feet based only on a suggestion and also acknowledged they made no study to ascertain the concentration of existing licenses. One of the councilmen also expressed his belief the Borough had too many liquor licenses.

The Council amended the ordinance in July 1985. The amendment followed an application by the Moby Dick to transfer its license. It resulted when the Council discovered Moby Dick could not transfer to its proposed site because of the 1500 foot distance requirement.

The amendment accommodated the Moby Dick transfer application. It set out as its purpose redefining "location restrictions" and insuring relocations will increase rather than decrease the distance between licensed premises. It then provid-

ed, in its pertinent part, the following exceptions to the 1500 foot requirement:

> Sub (1) These regulations shall not affect an alcoholic license presently located within 1500 feet of another alcoholic beverage licensee as long as the relocation of said license shall maintain a minimum of 750 feet from any other alcoholic beverage licensed premises. Further, in the event that any alcoholic beverage licensee is currently located within 750 feet of another licensee, they may relocate their license as long as said relocation increases the current distance between the licensees.

It then went on to provide:

> Sub (2) In the event that any alcoholic beverage licensee is located within 750 feet of more than one (1) alcoholic beverage licensee, then said licensee may be relocated so long as the distance between it and the nearest licensee is increased.

Since the Borough had only one pocket license or unsited license, the A & P license, the entire ordinance had the effect of insuring that only the A & P license would be 1500 feet from all other licenses whether "C" or "D" types.[2] The remaining licensees, if they sought to relocate, could create in that relocation the same concentration of licenses that existed at their prior location. Consequently, by the amendatory ordinance, concentration of licenses, contrary to the expressed purpose of the ordinance as originally adopted, could occur. For example, the Moby Dick transfer site is located on Richmond Avenue, 1200 to 1300 feet from Bar Car.

There is a general premise that a state agency must apply the local ordinance in effect at the time of the agency decision. *See Walker v. N.J. Dept. of Inst. & Agencies,* 147 *N.J.Super.* 485, 489 (App.Div.1977). The premise finds its acceptance in the reasoning that, in absence of contrary evidence, the municipality is presumed to have adopted the ordinance in good faith and in the public interest. *See Allendale Congregation of*

---

[2]During the appeal hearing, A & P presented a map of the Borough which located all existing licenses. While neither the map nor testimony in the record establishes the precise distance between existing licenses, the map does demonstrate distances between licenses of much less than 1500 feet, and in some cases less than 750 feet.

*Jehovah's Witnesses v. Grosman,* 30 *N.J.* 273, 277 (1959), appeal dismissed, 361 *U.S.* 536, 80 *S.Ct.* 587, 4 *L.Ed.*2d 538 (1960). Likewise, motivations of the governing body are irrelevant to the validity of the ordinance, absent a showing of fraud, personal interest or corruption. *Helmsley v. Borough of Fort Lee,* 78 *N.J.* 200, 236 (1978), appeal dismissed, 440 *U.S.* 978, 99 *S.Ct.* 1782, 60 *L.Ed.*2d 237 (1979). *But see Wital Corp. v. Denville,* 93 *N.J.Super.* 107, 110–111 (App.Div.1966) (where we concluded that the rule did not preclude a judicial inquiry into the *purpose* of the ordinance).

■ Consequently, it is clear that any municipal legislation must have as its purpose the promotion of the public interest which is synonymous with protection of the public health, safety and welfare. When the purpose is demonstrated to be otherwise, justification exists for refusing to apply the general premise. Here, the Director found:

> ... no studies [were] done prior to the enactment of this ordinance, ... the master plan was not consulted, ... [the ordinance] ... unduly restricts the Appellant from transferring and reactivation of its license [based in part on finding that a map of the Borough with 1500 foot circles around each existing licensee, demonstrated a limited number of areas in which A & P could locate] and ... the current amendment was apparently undertaken for the essential purpose of allowing another licensee to transfer its license while still restricting Appellant....

He also determined that A & P's loss of its prior licensed premises occurred through no fault on A & P's part. He further recognized that a liquor license is a protected property interest.

He then concluded:

> The ordinance amendment, while artfully drafted to attempt to deter the A & P transfer application, clearly demonstrates that the avowed objective to reduce license density was a sham since exceptions were granted to favored licensees that allow concentrations greater than 1500 feet amongst licenses.

We find the Director's factual findings and conclusions to be supported by the credible evidence in the record. Implicit in his holdings is the concept that the ordinance lacks the "customary public interest underpinnings" required for application of the ordinance. *See Urban Farms, Inc. v. Franklin Lakes,* 179

*N.J.Super.* 203, 221 (App.Div.), certif. den. 87 *N.J.* 428 (1981). Further, due to lack of fault on the part of A & P in losing its prior licensed premises and due to the distinct possibility that application of the ordinance would result in precluding A & P from locating anywhere in Point Pleasant Beach, the equities do not warrant applying the distance-between-licensed-premises ordinance in this case. *See Kruvant v. Mayor & Council Tp. of Cedar Grove,* 82 *N.J.* 435, 442–445 (1980); *Urban Farms, Inc.,* 179 *N.J.Super.* at 221. This is not a situation where the rights of the individual must give way to the larger public interests as in *Dal Roth v. Div. of Alcoholic Beverage Control,* 28 *N.J.Super.* 246, 255 (App.Div.1953).

Affirmed.