24 N.J. Super. 512 (1953)
95 A.2d 16
STATE OF NEW JERSEY, BY GEORGE BUTLER, LICENSE INSPECTOR OF THE CITY OF ASBURY PARK, PLAINTIFF-RESPONDENT,
v.
C.B.S. ENTERPRISES, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 1953.
Decided February 13, 1953.
*513 Before Judges EASTWOOD, BIGELOW and JAYNE.
Mr. William J. O'Hagan argued the cause for appellant (Mr. George S. Skokos; Messrs. Stout & O'Hagan, attorneys).
Mr. Abraham Frankel argued the cause for respondent.
The opinion of the court was delivered by JAYNE, J.A.D.
On July 4, 1952 there was in effect in the City of Asbury Park an ordinance designated as No. 612, entitled "An ordinance governing, regulating, and fixing fees of mercantile licenses in the City of Asbury Park, New Jersey, and regulating business licensed." The ordinance rendered it unlawful "to engage in or carry on any business, trade or calling, in using any wagon, vehicle, stand, store, or other place, or sell or offer for sale any goods, wares or merchandise" within the city without having first obtained a license.
The presently relevant portion of section 6 of the ordinance declared that "No license provided for by this ordinance shall be transferred from one person to another person and no license shall cover any other place of business than that for which it was issued."
Pursuant to applications addressed to the city, two licenses were issued to the defendant on June 27, 1952 to conduct at each of the specified locations the business classified as skill bingo. License No. 721 for a fee of $545 authorized the pursuit of the business by the defendant at premises known as *514 Nos. 104-106 Fourth Avenue. License No. 722 accorded to the defendant for a fee of $750 the privilege to conduct the same kind of business at Nos. 102-106 Fifth Avenue.
It is acknowledged that the defendant conducts the so-called business in both premises simultaneously and concomitantly by means of one microphonic device, thus providing the identical amusement (shall we say the one and the same game and succession of games) in which the patrons at each location compete separately for a single prize. We are obliged to confess our inability more specifically to describe the functional utility of this microphonic device because of our personal ignorance of the techniques of skill bingo and the paucity of information in that particular in either the appendix or the briefs.
On July 5, 1952 the license inspector of the city filed in the municipal court a formal complaint in which he charged the defendant with the violation of that portion of section 6 of the ordinance to which reference has been made, in that the privilege granted to the defendant was in each instance confined to the premises designated in the license and that the business at the two licensed locations was being conducted in conjunction.
The defendant was convicted and fined $25 by the municipal court and on appeal by the Monmouth County Court, from which latter judgment it appeals.
The question addressed to us is a narrow one. Does the restrictive provision of the ordinance which reads "No license shall cover any other place of business than that for which it was issued" prohibit the one licensee from conducting the licensed business at two licensed locations by means of the use of one instrumentality essential to the operation of the business at both locations but which is situate and operated only in one of them?
It may be surmised from the import of the following notice which the defendant posted in the Fifth Avenue licensed premises that the practice of using the one address system through the communications of which the patrons of both *515 locations compete as a group makes possible some "fraudulent activity" on the part of the management:

"NOTICE!

$1000 REWARD!
When entering this `Skill Bingo' game you are competing with patrons now playing at `Steve's Skill Bingo' on 4th Ave.
Both places are connected by direct telephone wire & games are conducted simultaneously.... . .
To insure everyone that this operation is free of any fraudulent activity the management hereby posts a reward of $1000 in cash to any one who can prove differently.
 Thank you
 Management"
But does section 6 of the ordinance by its phraseology embrace the interdiction of such a practice and its possibilities? We think not.
It has been reiterated many times that an ordinance, the violation of which subjects a person to a penalty, must be strictly construed and its provisions are not to be expanded by the courts by mere implication. Rupprecht v. Draney, 126 N.J.L. 383 (Sup. Ct. 1941); Smith v. City of Asbury Park, 3 N.J. Super. 161 (App. Div. 1949); State v. Meinken, 18 N.J. Super. 188 (App. Div. 1952), affirmed 10 N.J. 348 (1952).
The touchstone is whether the text of the ordinance adequately informs persons of the thing they are forbidden by the ordinance to do.
The obvious intent and purpose of section 6 is to restrict the license to the use of the person to whom and to the premises for which the license is issued. The section manifestly relates to the transferability of such a license in respect to both the licensee and the premises. It cannot be logically or legitimately stretched to encircle the activity alleged in the complaint.
We therefore conclude that the conduct for which the defendant was convicted was not violative of the ordinance. The judgment of conviction is accordingly reversed.