36 N.J. Super. 565 (1955)
116 A.2d 646
JOHN CUTAIO, PLAINTIFF-RESPONDENT,
v.
THE BOARD OF HEALTH OF THE CITY OF ELIZABETH, AND THE CITY OF ELIZABETH, A MUNICIPAL CORPORATION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued July 25, 1955.
Decided August 30, 1955.
*566 Before Judges FRANCIS, HALL and BURTON.
Mr. Raymond A. Leahy argued the cause for defendants-appellants.
Mr. H. Harding Brown argued the cause for plaintiff-respondent (Mr. Marcus I. Blum, attorney).
Mr. Nathan Reibel filed a brief on behalf of Anthony Foti and Theresa Russo, amici curiae.
The opinion of the court was delivered by HALL, J.S.C. (temporarily assigned).
This appeal is from a summary judgment directing defendant Board of Health of *567 the City of Elizabeth to grant a transfer to a new location of plaintiff's license to operate a poultry slaughter house.
The sanitary code, adopted by the board of health as an ordinance in 1926, provides that no person, firm or corporation shall slaughter poultry in a public market in the city without first having obtained a permit from the board for that purpose and that such permit shall be issued upon payment of a fee of $50, to expire at the end of one year from the first day of July.
The succeeding section of the code, entitled "Requirements for Poultry Slaughter Houses," requires conformity of all buildings in which such operations are carried on with specified conditions relating to floors, walls, ventilation, direct sewer connection, and refuse receptacles. It is further directed that all parts of such places of business shall at all times be kept in sanitary condition.
In May 1952 the board adopted an ordinance amending the code, with which we are primarily concerned on this appeal.
The pertinent sections read as follows:
"Section 1. That the number of poultry slaughter house licenses in the City of Elizabeth be limited in number to the present existing number, to wit, twenty (20), heretofore issued by the Board of Health, and that all provisions, requirements and fees concerning the issuance of a slaughter house license remain the same.
Section 2. That the Board of Health of the City of Elizabeth may hereafter issue renewals from year to year, and transfers from one owner to another owner at the same address, provided, that all provisions are in compliance with the Elizabeth Plumbing and Sanitary Codes."
General legislative authority for the enactment of such local ordinances is found in R.S. 26:3-31.
"The local board of health shall have power to pass, alter or amend ordinances and make rules and regulations in regard to the public health within its jurisdiction, for the following purposes:

* * * * * * * *
k. To regulate, control, or prohibit the keeping or slaughtering of animals."
*568 Our attention is not called to any other statutory or ordinance provisions or rules and regulations applicable in the City of Elizabeth dealing with the subject.
The basic facts, as alleged in plaintiff's complaint and admitted in the answer, are not in dispute. Plaintiff had been engaged in the poultry slaughtering business in rented premises at 305 John Street, Elizabeth, for approximately 15 years, under a license issued by the board and renewed annually. About April 15, 1954 he applied to the board to transfer his current license to premises at 512-514 Fourth Avenue. This location then consisted of vacant land owned by him upon which he proposed to erect a suitable building for his business. Both locations are in areas where such a business is permitted by the city zoning ordinance. Plaintiff submitted to the board detailed plans of the proposed new building conforming to all requirements, which were approved by the board.
From the affidavit submitted in support of plaintiff's motion for summary judgment, to which no answering proofs were filed, we learn that the board decided to hold a public hearing on the transfer application and did so on June 16, 1954, on notice to plaintiff. The record contains no evidence as to what transpired at the hearing, but we gather objections were made by property owners in the area of the proposed new location. The board made no findings of fact but simply, at the conclusion of the hearing, denied the transfer "on the strength of the objections at the public hearing." There is no indication of the nature or factual foundation of the objections.
This suit followed. Plaintiff sought thereby to compel the transfer, contending that the amendatory ordinance did not prohibit a license transfer from one location to another and was unreasonable and invalid and that the board's refusal was arbitrary, capricious and without legal basis. The defendants' answer constituted no more than a general denial of improper action.
As indicated, the proofs on the motion for summary judgment consisted only of the basic facts above outlined, which *569 were not denied, plaintiff claiming his right to relief thereon as a matter of law. The lower court granted the motion and ordered the transfer to be granted effective on the completion of a complying building at the new location. It held that the ordinance was silent concerning license transfers from one location to another and did not prohibit such; that a contrary interpretation might well be unconstitutional as without adequate relationship to the safety of the community from a health and welfare standpoint and in any event would be illegal since no standards were prescribed to govern such transfers; that, lacking such standards, the board could not withhold permission to transfer location where all specified requirements had been met and that it had acted unreasonably and arbitrarily, no evidence being presented or valid reasons assigned to uphold the action of denial.
The grounds upon which defendants seek the reversal of the judgment below are not entirely clear. It is suggested that the amendatory ordinance prohibits all transfers from place to place. It is also contended, perhaps more primarily, that a transfer can be validly denied if, in the opinion of a board of health, the health of the community would be endangered.
We are of the opinion that neither the original nor the amendatory ordinance prohibits license transfers from one location to another. We are not called upon to, and do not, pass upon the question of whether such a prohibition would be lawful in the light of the enabling legislation permitting absolute prohibition of all animal slaughtering by local ordinance. Clearly, there was nothing in the original ordinance indicating intention to prevent transfers of licenses from one premises to another.
The 1952 amendment evidences the will of the board that thereafter there shall be no more than 20 poultry slaughter houses in Elizabeth, with licenses limited to those then issued, with all provisions, requirements and fees remaining the same. We are not concerned with the validity of the numerical limitation and express no opinion on it. Since, by the provisions of the original code, each license is *570 issued to a person, firm or corporation for one year only, the amendatory ordinance might be interpreted to prevent renewals and accomplish complete prohibition of the business after the succeeding July 1, as well as permanent termination of the right to do business if a licensee sold his business during the year, if it were not for the provisions of section 2. This section expressly permits renewals from year to year and transfers from old to new owners at the same address during the license year, provided of course the code requirements continue to be met. There is no specific prohibition of transfers from location to location. Any such construction could arise only by inference and implication. While ordinances are to receive reasonable construction and application to serve apparent legislative purpose and that which is reasonably implied is as much a part thereof as that expressed (Wright v. Vogt, 7 N.J. 1 (1951)), it is equally elementary that a penal ordinance must be strictly construed and where the words are not clear, its provisions are not to be expanded by the courts by mere implication or intendment. State v. Mundet Cork Corp., 8 N.J. 359 (1952); State v. C.B.S. Enterprises, Inc., 24 N.J. Super. 512 (App. Div. 1953). The same rule should be applied where the claimed interpretation would be, in effect, prohibiting of the right to conduct an otherwise lawful business. The board of health did not see fit to prohibit location transfers by clear, express language. Any intention to do so cannot be read into the ordinance by judicial construction.
We proceed to the board's contention that its action was justified, as it puts it, "under the general police powers of the municipality to protect the public health" and is presumed valid in the absence of proof demonstrating it to be arbitrary, capricious or unreasonable. This is but another way of saying that the board can, in its uncontrolled discretion, deny a transfer. The only basis of denial shown by the record is "on the strength of the objection at the public hearing." This is clearly not a valid ground. Advance Development Corp. v. Mayor and Aldermen of Jersey City, 6 N.J. Misc. 238 (Sup. Ct. 1928), appeal dismissed 105 *571 N.J.L. 234 (E. & A. 1928); Nusser v. Board of Adjustment of Newark, 134 N.J.L. 174 (Sup. Ct. 1946).
More fundamentally, there is nothing in the original or amendatory ordinance even attempting to vest discretion in the board to grant or deny a license or transfer. Were such a broad power specified, it would be clearly invalid unless adequate standards were incorporated to govern the deliberations of the officials having the discretionary power. Weiner v. Borough of Stratford, 15 N.J. 295 (1954); Isola v. Borough of Belmar, 34 N.J. Super. 544 (App. Div. 1955); Finn v. Municipal Council of Clifton, 136 N.J.L. 34 (E. & A. 1947); Lipkin v. Duffy, 119 N.J.L. 366 (E. & A. 1938).
Defendants rely on Roich v. Board of Commissioners of Union City, 11 N.J. Misc. 733 (Sup. Ct. 1933), where the court spoke of the health officer being vested with discretion to issue licenses for the operation of live poultry markets and affirmed a denial for lack of proof of abuse of discretion. The provisions of the ordinance are not quoted and we must assume they prescribed sufficient standards. If not, the decision does not represent the present clear state of the law. In Kurinsky v. Board of Health of Lakewood Township, 128 N.J.L. 185 (Sup. Ct. 1942), also relied upon by defendants, the court found the presence of sufficient standards. The reference in the opinion to the licensing of poultry markets and slaughter houses as resting in the sound discretion of boards of health, citing the Roich and other early cases, must be read in the light of the court's later express finding of proper and adequate standards.
The court below concluded that the ordinance and amendment contained no standards to govern the board with respect to the transfer of licenses from place to place. We think such standards are present to the extent found in the section of the original code captioned "Requirements for Poultry Slaughter Houses," continued in full effect by the amendment. We are of the opinion that such of these as specify the kind of building required and are not related merely to future operations of a licensed establishment are the standards and the only standards which may be considered *572 in connection with the issuance of a license, and that they apply as well to a location transfer application. If these are met, and the proposed location is in a zone permitting such a business use, the board must grant a transfer. It might have prescribed additional requirements or considerations in the ordinance, which would have to be met if constitutionally reasonable, but it has not done so. Concededly plaintiff fulfilled all ordinance requirements. He was entitled to the transfer of his license. The board's denial was arbitrary, capricious and unlawful.
The judgment is affirmed.